JOHN W. HUBER, United Stated Attorney (#7226)
J. DREW YEATES, Assistant United States Attorney (#9811)
Attorneys for the United States of America
185 South State Street, Suite 400
Salt Lake City, Utah 84111-1506
Telephone: (801) 524-5682
Facsimile: (801) 524-6924

FILED IN UNITED STATES DISTRICT
COURT, DISTRICT OF UTAH

OCT 16 2015

D. MARK JONES, CLERK
BY _____
       DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH, CENTRAL DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | **FELONY COMPLAINT** |
| Plaintiff, | : | |
| | : | VIOLATION: 2:15-mj-356-EJF |
| vs. | : | 18 U.S.C. § 111(a)(1) and (b), Assault on a Federal Officer. |
| | : | |
| AARON B. JEREB, | : | |
| Defendant. | : | |
| | : | |

Before the Honorable Evelyn J. Furse, United States Magistrate Judge for the

District of

Utah, appeared the undersigned, who on oath deposes and says:

<u>COUNT I</u>
[18 U.S.C. § 111(a)(1) and (b)]
[Assault on a Federal Officer]

On or about October 15, 2015, in the Central Division of the District of Utah,

AARON B. JEREB,

the defendant herein, did forcibly assault, resist, oppose, impede, intimidate, and interfere

with a person designated in 18 U.S.C. § 1114, specifically, a United States Forest Service Officer, while the officer was engaged in and on account of the performance of official duties, and such acts involved physical contact which inflicted physical injury; all in violation of 18 U.S.C. § 111(a)(1) and (b).

## AFFIDAVIT IN SUPPORT OF COMPLAINT AND ARREST WARRANT

Complainant states that this affidavit is based on information obtained through an investigation consisting of the following:

1. I, Michael L. McKinney, have been the Assistant Special Agent in Charge with the United States Forest Service (USFS) since June 2010. I served as a Special Agent with the USFS between 2006 and 2010, a uniformed Law Enforcement Officer with the USFS between 2003 and 2006, a Special Agent with the National Nuclear Security Administration / U.S. Dept. of Energy between 2001 and 2002, a Special Agent with the Appalachian Drug Task Force between 1997 and 2001, and a Deputy Sheriff between 1996 and 1997. I also currently serve as a U.S. Airforce Reserve Special Agent with the USAF Office of Special Investigations. I have approximately nineteen years of law enforcement experience. Prior to my law enforcement career I served approximately ten years on active duty in the United States Army. I have attended and graduated from several state and federal law enforcement academies to include the Federal Law Enforcement Training Center (FLETC), and the Criminal Investigator Training Program at FLETC.

2. I make this affidavit in support of the issuance of an arrest warrant for Aaron B. JEREB. This affidavit sets forth information provided to me by other law enforcement officers and is also based upon my personal knowledge. This affidavit does not include each and every fact known to me but those related to a violation of 18 U.S.C. § 111(a)(1) and (b), Assault on a Federal Officer.

3. In the late hours of October 15, 2015, USFS Law Enforcement Officer (LEO), Darren Schiedel observed a vehicle parked along the side of Forest Service Road # 011 (a.k.a. Lambs Canyon Road), located in Salt Lake County, Utah. The vehicle was occupied by two subjects later identified as AARON B. JEREB and Amber Haanpaa.

4. LEO Schiedel knows this area to be a common area for drug use. As LEO Schiedel approached the vehicle in his patrol car he observed overt movements inside the vehicle.

Based upon his training and experience LEO Schiedel believed the movements were indicative of attempts to conceal items of contraband.

5. LEO Schiedel approached the vehicle and made contact with the occupants. As LEO Schiedel conversed with the occupants he observed a mirror on the center console armrest. On the mirror was a "line" of a white powdery substance. LEO Schiedel recognized the powder and mirror as illegal drugs and drug paraphernalia, respectively. LEO Schiedel also observed JEREB tightly holding a wad of paper in his left hand.

6. LEO Schiedel physically seized the mirror with the suspected contraband substance. LEO asked JEREB and Haanpaa to get out of the vehicle. JEREB stated to LEO Schiedel that the substance on the mirror was methamphetamine and that it belonged to him. LEO Schiedel then conducted a search of the vehicle for further contraband. More contraband was located in the passenger compartment of the vehicle to include a vial, a plastic baggie, and used tin foil – items consistent with drug paraphernalia and illicit drug use. LEO Schiedel also located a "lump" of a substance that was field tested and indicated positive for heroin. These items were found in a small purse located on the driver's seat of the vehicle.

7. LEO Schiedel placed both JEREB and Haanpaa in handcuffs and read them their *Miranda* rights. Both the JEREB and Haanpaa waived their *Miranda* rights and stated to LEO Schiedel that they would be cooperative with narcotics detectives. LEO Schiedel placed JEREB and Haanpaa in his patrol car to await the arrival of a narcotics detective. LEO Schiedel resumed his search of the suspect vehicle based upon probable cause. During this search LEO Schiedel located a marijuana pipe and small container containing a user amount of marijuana.

8. Upon the arrival of the Unified Police Department narcotics officer, LEO Schiedel contacted an Assistant U.S. Attorney (AUSA) and inquired as to how the AUSA would like to proceed with the case. The AUSA advised LEO Schiedel that he could issue JEREB and Haanpaa mandatory appearance notices. A UPD narcotics officer spoke with JEREB and Haanpaa and then departed the area.

9. LEO Schiedel advised JEREB and Haanpaa that he would be issuing them mandatory appearance notices and that he would then be releasing them. LEO Schiedel released JEREB and Haanpaa from their restraints and asked them to sit in their vehicle while he prepared the citations. JEREB then attempted to get behind LEO Schiedel so LEO Schiedel physically escorted JEREB back to JEREB's vehicle.

10. LEO Schiedel returned to his patrol car and continued to prepare the citations. During this process, LEO Schiedel re-approached JEREB to inquire of the year of his vehicle. JEREB appeared to have trouble processing this request. LEO Schiedel then observed a large makeshift weapon in JEREB's right hand. JEREB's hand was balled into a fist and his knuckles were white from gripping the item tightly. LEO Schiedel advised JEREB to put the item down. JEREB stared back at LEO Schiedel in a manner LEO Schiedel perceived as hostile. LEO Schiedel perceived the item to be a weapon and again commanded JEREB to surrender the item. JEREZ refused to surrender the item. Haanpaa then removed the item from JEREB's hand and gave it to LEO Schiedel. The item was identified as a homemade baton-like weapon approximately 14" - 18" in length. At this point JEREB partially opened the driver's side door of the vehicle he was sitting in.

11. LEO Schiedel then returned the subject's driver's licenses and explained the court procedures. LEO Schiedel terminated the contact and returned to his patrol vehicle. At this point LEO Schiedel observed that JEREB and Haanpaa's vehicle would not start. Haanpaa then asked LEO if he would jumpstart their vehicle. LEO Schiedel responded that he had a vehicle starter kit and would help them start their vehicle. JEREB opened the hood of the vehicle and advised LEO Schiedel of where the battery was located. At this point Haanpaa asked JEREB to get back into the vehicle. However, JEREB told Haanpaa to get into the driver's seat of the vehicle.

12. Once the vehicle was started LEO Schiedel removed his vehicle starter kit and began walking back to his patrol car. At this point JEREB told LEO Schiedel "you don't look so good." JEREB repeated this to LEO Schiedel while staring at him. LEO Schiedel continued to move towards his patrol car but JEREB stepped in front of him blocking LEO Schiedel's path. Sensing increased hostility from JEREB, LEO Schiedel called for back-up on his portable radio. JEREB then told LEO Schiedel that back-up would never arrive in time. At this point LEO Schiedel felt fear that an attack was imminent and he began giving JEREB commands to "back up." JEREB did not follow the commands. LEO Schiedel then remotely deployed his Police Service Dog Livo. Livo joined LEO Schiedel at his right side.

13. At this point JEREB began to calling to Livo and attempted to lure Livo away from LEO Schiedel. Haanpaa had also exited the vehicle. Livo positioned himself between JEREB, Haanpaa, and LEO Schiedel. JEREB lunged for and grabbed Livo's collar.

4

LEO Schiedel commanded JEREB to release Livo. JEREB released Livo and lunged towards LEO Schiedel.

14. LEO Schiedel removed his electronic control device (ECD) and engaged JEREB. Livo also engaged with JEREB in an attempt to stop the assault and protect LEO Schiedel. Livo took JEREB to the ground. JEREB fought against Livo by gouging at the Livo's eyes and by attempting to strangle Livo. JEREB used a stick to jab into Livo's head, neck, and side. The ECD deployment had only a minimal effect on JEREB and JEREB was able to break the connection wires and he continued to physically fight.

15. LEO Schiedel made several attempts to call out on his handheld radio, but his volume was turned down and he did not know if help was coming. LEO Schiedel then activated his "emergency" button on his radio. LEO Schiedel attempted numerous "drive stuns" with his ECD in an attempt to subdue JEREB and to keep JEREB from injuring LEO Schiedel and Livo. LEO Schiedel attempted to restrain JEREB in handcuffs numerous times throughout the physical struggle, but was unsuccessful. At one point JEREB took the ECD from LEO Schiedel's hands and LEO Schiedel was "tased" several times before regaining control of his ECD.

16. JEREB continued punching and strangling Livo. LEO Schiedel ordered Livo back to his kennel in an attempt to get JEREB to stop fighting. At this point JEREB attempted to escape on foot. In response LEO Schiedel re-deployed Livo and commanded Livo to reengage JEREB. JEREB attempted to move behind LEO Schiedel's patrol vehicle and LEO Schiedel attempted to use "pepper spray" to subdue JEREB. At this point LEO Schiedel, Livo, and JEREB were located adjacent to a steep drop down to a creek. It appeared that JEREB was attempting to pull Livo over the embankment and LEO Schiedel commanded Livo to disengage in attempt to spare Livo from further injury. LEO Schiedel watched JEREB leave the area on foot. Backup officers arrived a few minutes later and JEREB was eventually apprehended nearby.

17. LEO Brandon Robinson responded to the scene, post-incident, and interviewed Haanpaa after re-advising her of her *Miranda* rights. Haanpaa advised that LEO Schiedel was being very nice to them and was helping them start their car. Haanpaa also stated that JEREZ was "high" on methamphetamine. Haanpaa explained that once LEO Schiedel permitted them to get back into their vehicle JEREB retrieved and held a homemade baton type weapon. Haanpaa further explained that after their car was started with LEO Schiedel's assistance, JEREB attacked LEO Schiedel.

18. Both LEO Schiedel and Livo sustained physical injuries. Based upon the foregoing, probable cause exists to believe that AARON B. JEREB committed a violation of 18 U.S.C. § 111(a)(1) and (b), Assault on a Federal Officer. I swear that this information is true and correct to the best of my knowledge, information, and belief.

DATED this 16th day of October, 2015.

*[signature]*
MICHAEL L. McKINNEY
Assistant Special Agent in Charge
United States Forest Service

APPROVED AS FORM:

JOHN W. HUBER
United States Attorney

*[signature]*
J. DREW YEATES
Assistant United States Attorney

SUBSCRIBED AND SWORN TO BEFORE ME this 16th day of October, 2015.

*[signature]*
EVELYN J. FURSE
United States Magistrate Judge